Good morning. Good morning, Your Honor. May it please the Court, I'm Walt Pennington on behalf of the appellant, Aspic Engineering and Construction Company. I will watch my time. I plan to reserve between four and five minutes for rebuttal. I'll divide this part of my time into three segments. The first segment will address vacating the arbitrator's denial of attorney fees and costs to Aspic and remanding to the district court for proceedings to enter those fees and costs. The second segment will address confirming the remainder of the arbitration award. And the third segment will address the appellant's request for the court to issue instructions to the district court. Vacating the denial of the attorney. Let me just ask you, right off the bat, this is, these cases, of course, are troubling because we have more and more and more going to arbitration. But this one deals with a contract with the essence of foreign entity that's filled with all of the typical government language that we all have to deal with. It's all kinds of subparts and requirements and the like. And it looks like what happened is that the arbitrator just said, look, let me just look at this and see what's fair. That's what it appears to me to be. But if he did that, and if that's okay, and I'm not saying it is, but if he did that, how then can you argue that you're entitled to attorney fees since he basically put the language of the contract to the side and said, let's do what's fair? Your Honor, when I look at the arbitrator's award, on, this is on the record on page 27, at the next to the last line, here it says, it was not reasonable when the parties entered the subcontractor, they both had the same expectations. ECC could not have expected, ECC could not expect that ASPIC would be capable of modifying their local business practices. So there where he's starting, he's saying, based on the evidence and testimony that was did not expect my client to conform to the strict performance of the contract. And then he goes on and says, well, basically, that's my point, though. He basically said, forget this contract, you know, that they couldn't have expected that. This is what I think they thought, and I'm going to do what's fair. Isn't that what happened? Well, it's not what happened, so I have two separate answers for that. So the first is, is that the arbitrator went by the party's conduct and how they conducted themselves and what ECC actually expected of ASPIC, regardless of what the contract said. ASPIC fulfilled those. If that's right, if that's right, then where do the attorney fees come into it? Because they weren't really part of the conduct, were they? The, well, the attorney fees are justified. But they're part of the contract. They are part of the contract. And the arbitrator is only finding the strict performance. But, Your Honor, I can set that aside, because in this particular case, ASPIC did fully comply with what the contract required. So the arbitrator is talking about those terms because those were the issues raised by the appellee. And so it was really an accommodation to the appellee. In this case, ASPIC, my client, fully complied with the terms of the contract. So all of these provisions that- Wait, wait. So you're saying that this arbitrator said, like, I've heard what these folks have to say, and it's real clear they didn't really expect anybody to live up to the contract. So I'm going to decide what they really did intend, and I'm going to do what's fair. And, but you're saying, nevertheless, you want us to focus on the contract with respect to the attorney fee portion, because, why? Because that's what the parties intended, or was it because of what the contract provided, which the arbitrator has ignored otherwise? So in other words, you want us to have the arbitrator focusing on a part of it and not on the other part. Is that right? Well, the arbitrator was distracted. The, here, my client, ASPIC, fully conformed to the duties it had under the contract. Wait a minute. I thought you just said that the arbitrator said that the parties never intended to do that. They had other things in mind. They had expectations. And they weren't reflected in the contract. Did I misunderstand you? That's what the arbitrator held, that's what the arbitrator's award is, but that's not what happened. ASPIC fully complied with the terms of the award, or fully complied. In the contract, the ---- Well, obviously, it didn't fully comply with the terms for making your claims for a settlement upon termination for convenience. It didn't comply with that. Okay. So, it complied with, it did something that was contemplated by the contract, but it didn't comply with that provision. So, the arbitrator doesn't tell us what agreement the parties came to with respect to separate parts of the contract. For example, you're arguing for attorney's fees, and aren't you arguing for a different way of calculating damages than is in the contract? That's another thing you say, we don't want the contract, we want something else. So how do we know which parts of the contract the arbitrator said there was a different meeting of the minds, or no meeting of the minds for this provision, but meeting of the minds for these two other provisions? Within the authority that the arbitrator had, those are the powers that the arbitrator had under the contract to interpret these provisions, to interpret the party's conduct, and the arbitrator's powers are very broad, and the way in which the arbitrator ---- this is a negotiated settlement. Arbitration is a negotiated settlement. The parties here, under paragraph 12.4, were required to try to negotiate a settlement. If they can't, they go to mediation. And then the third part of that is if they can't reach a settlement at that point, both parties agree to have a settlement determined by a third party, and in this case, that's the arbitrator. A settlement is never perfect. A settlement is giving, waiving some of your rights in terms of for finality on it. And here ---- And here, what the arbitrator said was, well, I'm not going to apply the agreement in terms of the federal regulations applicable because there was no meeting of the minds there, right? That's the basis of the arbitrator's ruling in Aspect's favor is that I'm not going to apply or enforce this particular provision of the subcontract. So then is the same question before us, the question that was before the district court, was that really an award that drew its essence from the agreement? Is there reason to throw out, essentially, the agreement here? So, Your Honor, at the arbitration, there were two separate arguments. So the appellees argued that these provisions that define the term contractor applied to Aspect. And Aspect referred to those subparts where, for example, in 52-249-2, where the settlement and the form of it actually apply. They don't apply because the third section and one of the requirements that the United States gave to ECC, ECC CENTCOM and ECC International, was that they must settle, they shall settle with their subcontractors, in this case, Aspect. The other part is that in the federal acquisition regulations, it says that the prime contractor shall settle with the subcontractor. So these are affirmative duties on ECC. So these other provisions related to 52-249, 52-249, I believe it's A-3, provides that. Now, so with respect, what I find you doing is basically saying some parts of the contract are okay, so we're going to apply them, and the other parts, we don't like those, and we're not going to apply them. And I wonder how, I mean, as you well know, our government, for its own reasons, contracts with people all around the world, many of whom involve foreign nationals, have different legal systems, everything, and there are always a big stack of conditions and requirements and so on, and it seems to me what the arbitrator did here, in effect, was to decide what was fair, but in effect got the application of the regulations. And I'm concerned about that. How do you respond to that? Well, Your Honor, the regulations that the arbitrator cites to refer to contractor. Contractor, in this case, is not my client. It is the prime contractor, who, ECC International. In all of those sections, if you go down just a few sections below, it will say the prime contractor must settle with the subcontractor. So, and here is where the confusion came in, was ECC International said, these cases related to the settlement and submitting a settlement proposal are applied to my client, when in fact it's the opposite. ECC International had a duty to settle with the subcontractor, my client, ASPIC. It then settles, compiles all of its individual costs, plus all of the costs of its subcontractors, makes a single settlement, and then submits that to the United States. Here, what ECC tried, ECC International and ECC CENTCOM did, was to say, these provisions related to settlement apply to ASPIC. But that's not true, and that's not correct, and that's not the regulations. But there was a pass-through provision, right, that would have applied the regulations to subcontractors as well. That's correct. And so the way that works is, you have the United States that has its prime contractor. The prime contractor has its subcontractor. And if ASPIC would have had another subcontractor, then it would have had to do that. So ASPIC would have stood in that provision, stood in that place as the contractor, and it would have collected all of those subcontractors, settled with its subcontractors, and then submitted its combined proposal to ECC. If ECC has to submit to the government the settlement, it has to have the backup papers required by the regulations. And if ASPIC is doing the work, it's the one that collects the papers. Right? ECC is not going to get paid by the government if it can't settle with ASPIC, right? That's correct. And, Your Honor, what the regulations require, and I cited this in my brief, was that ASPIC, the prime contractor must settle with the subcontractor, not the reversed. And the subcontractor, in this case, shall submit its proposal. There are two parties. However you put them, first, second, whatever, they've got to settle. And in this particular case, what seems to have happened is that the terms of the contract became somewhat irrelevant. The arbitrator wanted to find out what was fair. Is that what happened? No, Your Honor. The arbitrator interpreted the contract. And that was within the arbitrator's powers to interpret the contract. Do you want to save me any more time? I would. Thank you, Your Honor. You're welcome. Okay. Let's hear from ECC. Good morning, Your Honors, and may it please the Court. My name is Joe Martinez on behalf of ECC ConsentCom Constructors and ECC International. The issue that was submitted for arbitration was a very particularized question. What is ASPIC entitled to under Federal Acquisition Regulation 52-249-2? A term expressly incorporated in the subcontract, a term expressly flowed down through language in the subcontract. And, again, we have two subcontracts here in support of two different Federal projects, the Sheberghan Project and the Baghdiz Project. Those refer to the provinces in Afghanistan where the work was being done. Identical language in both. Excerpt of Record 405 is the Sheberghan Contract portion I'm referencing. Baghdiz is at Excerpt of Record 820. And that language gives instruction to the parties. Here's how we're going to use these FAR clauses in the resolution of a variety of instances. Of course, the one at focus here is the Termination for Convenience Clause. That paragraph begins, Subcontractor shall comply fully with all applicable Federal Acquisition Regulation requirements. That paragraph continues to a sentence that says, In all cases, citations should be construed to apply to the subcontractor as they apply to ECC as prime contractor. Clause continues. The terms contractor and contracting officer as used in the clauses incorporated by this reference shall be deemed to refer to the subcontractor. Government and contracting officer as used in the clauses incorporated by this reference shall be deemed to refer to subcontractor. And basically the construct that is set up is ECC is bound to the government under this FAR clause. And it provides things like... I get that. I guess my question would be, though, the arbitrator's conclusion seemed to be that the FAR provisions were inapplicable based on the past practices between the parties. Aren't we required to accept that finding in our review of the award? No, Your Honor. I think the inquiry for the court, for initially the district court, and now here on appeal, is whether the arbitrator's finding can be reconciled with the contract. Does it result from, is it irrational? Is it somehow reconcilable with the terms of the contract agreement? And why it's not, the arbitrator's finding is, I'm not going to apply the contract. So, then, Judge Smith just said to you the arbitrator made a finding that there was a practice between the parties. And you said yes. And can't an arbitrator consider that the contract terms have been modified by a practice? I should clarify that, Your Honor. I don't read the arbitrator's decision to say I found that the parties by conduct waived the application of these FAR clauses. What I read it to be is the natural reading of it is, if I read this contract, ECC expected ASPEC to do a number of things that seem hard. It's unfair for ASPEC to have to comply with that. The arbitrator goes so far as to refer to Afghanistan business practices as being too primitive to comply with government contracting requirements and then says, again, I think the natural reading is, so I'm not going to pay attention to the contract. If I enforce the contractual terms as written, then there will be an unfair outcome. So I'm simply not going to do it. Let me then get back to the question I asked your opposing counsel. Yes, Your Honor. My understanding is, as well, that whether he found that the FAR provisions were basically inapplicable because of past practices, but basically it seems like he just said, forget this contract, forget the requirements, the backup documents that my colleague referred to and so on, let's just figure out what's fair. Is that what happened? I believe it is, Your Honor. Let me only clarify. I don't think there was a finding of any past practices that constituted a waiver. I think what the natural reading is, the contract as written would require A, A leads to an outcome that he thought was unfair, so in his own industrial brand of justice, as a public policymaker and not an arbiter of a contractual dispute, decided I'm not going to do it. It's unfair. And was it because he thought the Afghan business practices were, in quotes, primitive and therefore we really can't apply this law to them? That appears to be his decision, yes. If that's the case, then I suppose that could apply to many contracts the government has with people all over the world in more, in quotes, primitive settings. Is that a fair statement? I think that's a very fair statement. And certainly a line of consideration. I should note, the government ultimately pays these costs in the very typical circumstances. They get passed through and the government can be bound to arbitrary decisions between subcontractors and primes. There's a provision in the FAR for that. So this idea that these federal contracting requirements that are mandated by policy to be in these contracts worldwide are too onerous for some unknown grouping or geography to comply with again is not an enforcement of the contract. That's not an interpretation of the contract. It is a clear divorce from the contract and its own public policy remedy. And from your perspective what is it exactly that the arbitrator decided and on what basis? To my read of it and Garvey, that we were initially bound by what did the arbiter actually say my read is arbiters saying, I fully acknowledge you wrote these contracts to make I think that was unfair. I don't think ASPIC can comply with them. If I make them comply with them, they won't recover and I don't think that's the right outcome here. So I'm going to throw out the contracts and do what I think is fair. And then the arbiter proceeds to walk through the discussion of damages and decides what amounts he thinks are due to ASPIC and what amounts are not. And you mentioned that the government paid. Did it pay on the arbitrator's reward? It did for the Bagdees partially. So where the posture of this case ends, the Bagdees amounts were put into a termination settlement proposal that went to the government. At the time of arbitration that had not been resolved, the defense contract auditing agency was still working its way through the proposals. Questions were being asked. The government was informed of I would note this is not in the record. This all happened after the briefing to the district court. The government was informed of the arbitration decision. They paid on the Bagdees amount. My understanding again, they've been informed that that has now been vacated. So we don't have a resolution of the amounts owned in Bagdees. But what do we do with that? I mean, it sounds like however we view what the arbitrator did, is this a fait accompli at this point? No, not at all, Your Honor. The issue remains if the court affirms The government paid the Bagdees amount, right? Isn't that basically the arbitrator's reward? It has paid Bagdees. It has been informed that the dispute has arisen, that the underlying basis for them to pay has now been vacated. And so however this ultimately resolves. If we were to affirm, you'd be back in arbitration, correct? I believe so, yes. Is it back in arbitration? I guess I'm trying to get at the same question that Judge Smith asked. Are you back in arbitration just on the Sheberghan project or on both the Sheberghan and the Bagdees project? On both, Your Honor. However those get resolved. On Sheberghan, the parties already resolved at the prime level a no-cost settlement. So ECC had been paid basically its notice to proceed costs. So that was the amount that's given at the outset of the contract. They said, keep that. We're not going to go through the termination settlement proposal. And that's in turn what ECC approached with ASPIC and said, we've already paid you $2 million for 80 days of work. Project, not very little has happened. Do you have any costs above the $2 million that we would owe you for termination settlement? And they were never able to get the kind of documentation to establish under the FAR requirements that there were any further amounts to. So that sits there, again, fully ripe. If there's an arbitral award at some point, obviously there is one now, but that's been vacated. If you affirm, I think you'd like to go back to arbitration. I think that's up to my friend on the other side. If they wish to reinitiate arbitration, I imagine they would. But what do we do with the fact that the government, if I understood you correctly, the government has paid some portion of the award. I think that amount gets updated. So if there's a new arbitration award that's higher, or a new arbitration award that's lower, it gets reconciled. That's correct. So your agreement with or ECC's agreement with the government is not final. It can still be adjusted. That's my understanding, Your Honor, yes. And then certainly again with Sheberghan, we are only talking about If we vacate the award, it goes back to the arbitrator and Only if he initiates it. If you initiate it. If my friend on the other side If he initiates it, then it goes back for the arbitrator to apply the contract if we decide he didn't apply the contract. That's correct. What do we do, just arguendo, the arbitrator arguably didn't apply the contract, but your worthy opponent on the other side says, well we are at attorney fees and the contract says we're supposed to get them. How do we deal with that? Most of it, the contract has nothing to do with it. It's what's fair. And then you get the other side, the attorney fees are in the contract. Yeah, I think what's interesting about this case, as we highlight in the brief, is the parties are essentially in violent agreement that this arbiter threw out the contract. We certainly on the parts that, you know, candidly reflect what we don't like about it. My friend on the other side, the parts he doesn't like about it, but we both agree. This arbiter failed to give fidelity to the contract. The remedy that we have proffered to be appropriate, the one the district court concurred with, was to vacate the arbitral award, let the parties go back to the status quo ante and re-arbitrate and get a decision that is based on the contractual language. If the court were to disagree with that or look at the award fee piece on its own, certainly as we contend, there's no way that, to my mind, to find that an express statement that the contract is being thrown out could not be an irrational decision, but then to conclude the arbiter's decision not to award attorney's fees, applying the definition of prevailing party advanced by aspect during that phase of the arbitration, and saying, I'll take your definition, I'll apply it, California law, the law actually permits the determination that there is no prevailing party, that that somehow could be irrational or manifest disregard of law. So from an evidentiary kind of standpoint, again, I think that the whole thing was thrown out, vacatur is the appropriate remedy. What about on the damages? He's saying that, what, the arbitrator threw out that part, too. I guess I don't find that the arbiter threw out any damages. Inventory? I don't exactly know. Oh, yes, right. So one of the issues, I mean, where there was a, the arbiter calculated the damages roughly based on what he characterized as the inventory method. We moved, again, citing that that was in of itself a manifest disregard of law. The district court never reached that because of the way the case was dispensed with on the outset. The federal acquisition regulation elements that are incorporated into the contract expressly says, for a construction contract, you must use total cost, not inventory method. And just quickly, the differences in total cost, you basically start over and say, okay, the project was terminated. Tell me what were your actual costs? What did you actually spend to do the work up into the date of termination that you can support in accordance with the FAR requirements? We'll give you a fair profit on that amount, and that's what you're paid. Under total inventory, when you have partial performance, so let's say if I was going to deliver ten cars at $100,000 each, if I've delivered five inventory methods, well, we already had a price for that. You've delivered five. We're going to pay you the contract price. We'll only do this total kind of cost analysis for the remaining that we're still in process. Very difficult to do that in construction when there are not individual deliverable items. Okay, so you say the, I may have gotten this backwards, the arbitrator failed to apply the contract to both damages and the other regulatory matters. Yes, that is your argument. And his argument is the arbitrator failed to apply the provision on attorney's fees. That's correct. Okay, thank you. So our piece is, you know, I guess from an entitlement standpoint that was never really in dispute. The contracts were indisputably terminated for convenience. So the question then becomes, it really is all the damages question. Entitlement is run throughout that, but the question is, okay, it's terminated. What are your costs and the FAR sets out? What the arbitrator characterized as complicated. So the arbitral award was a one piece on one contract and one piece on the other contract. He merges the discussion of the contracts and of this total inventory method for purposes of damages, and it goes through two separate calculations. So there is Sheberghan, a list of costs that he thought were due, Bogdice, a list of costs, but the discussion about what the subcontracts require, the terms of entitlement, is uniform. I think I know who's on first. I don't know who's on second, but I think I know who's on first. Just to get a clear statement from you, and I'll ask your opponent as well, as you know, under the case law, the question we have to deal with is whether the arbitrator, in quotes, exceeded, in this way, his powers or the award is completely irrational or exhibits a total disregard of the law. Do you agree that's what happened here? I do, absolutely, Your Honor. I think the overall decision was based on an irrational outcome, reading out the entirety of the contracts. I mean, the discussion of the contractual language, and I should just emphasize part of what I think gave the district court some comfort and is appropriate to look at is what was the dispute that was placed before the arbiter? And the parties had extensive briefing. None of that briefing talks about whether there was waiver or duress or ambiguity of these terms. Both parties, in their opening briefs and throughout post-hearing briefing, start with the premise, this case will be resolved by looking to FAR 52-249-2. I think there was a so we will apply that clause. What does it mean? My friend on the other side aspect contended they met all of those requirements. We felt like they did not. That proving reasonableness, allocability, the cost principles, that none of that had occurred, and that was the dispute that was placed. And the arbiter threw all of that out. I would note, I mean, that gave our secondary issue before the district court, which I also didn't reach, was from an idea of a fundamentally fair hearing for the arbiter to render a decision material to his outcome that neither party placed into controversy and there was no briefing, no discussion, no is this duress, that that is fundamentally fair and also warrants vacature. With that, we respectfully request that you affirm. Thank you. Okay, counsel, you've got some time left. Thank you, Your Honors. I want to address one of the points that I think the Court may misunderstand. No money has been paid to ASPIC. There has been no settlement, no payment, no funds have come out of any settlement funds that the ECC has received. Okay, but, I mean, you were paid prior to the termination. We were paid for the work that it done. Now we're talking what you're saying, you haven't been paid from these termination settlements, right? The termination for convenience did not lead to a settlement for which you got any money. Correct. So, I want to start with, this is on page 38 of the appellant's opening brief, is FAR 48 CFR 49-108-3 Settlement Procedure. There it says contractors shall settle with subcontractors in general conformity. And then the next it says, however, the basis and form of the subcontractor settlement proposal must be accepted to the prime contractor. There's no requirements that the prime, that the sub settle with the, it's reversed. And the second is, is there's no particular form, so the total cost and inventory doesn't matter. Next I want to go to... Let me ask you this, as my colleague pointed out, in most of these government contracts, there are specific forms that have to be filled out, if in this case ECC is going to be paid. Around here we have to deal with the GSA who have similar wonderful practices. And all the forms have to be filled out. So how do you respond to that? So, Your Honor, what they do is they list on that form the subcontractor and the settlement that they made. But here, on neither case, they made a settlement. And in one of the cases, the Chevron case, they never tried to settle with ASPIC. And they went to the government and said, we're entering into a no-cost settlement even though ASPIC had submitted to them all of their costs and ECC gave back a letter that said, yes, your claim has been submitted to the United States. Any other questions? I know you have a lot more to say. Thank you, Your Honor. I appreciate your time. We appreciate your briefs. The case just argued is submitted and we will get back to you as soon as we can. Thank you. The Court stands in recess for the day.
judges: M. Smith, Nguyen, Restani